## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | | |
|---|---|---|
| KARL KAMMERER, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:24-CV-2182 |
| | ) | |
| THE UNIVERSITY OF KANSAS, | ) | |
|     Defendant. | ) | |

## COMPLAINT

COMES NOW, Plaintiff, Karl Kammerer, by and through undersigned counsel of record, and for his claims against Defendant, University of Kansas, states and alleges the following:

## PARTIES, VENUE AND JURISDICTION

1.      Plaintiff, Karl Kammerer, is a resident of the state of Kansas.

2.      Defendant, the University of Kansas (the "University"), is an institution of higher education established under the laws of the state of Kansas, and pursuant to Fed. R. Civ. P. 4(j)(2)(A), the University of Kansas may be served through its chief executive officer.

3.      Pursuant to K.S.A. § 76-714, the chief executive officer of the University of Kansas is the Chancellor.

4.      Accordingly, the University of Kansas may be served through Chancellor Douglas A. Gerod, 230 Strong Hall, 1450 Jayhawk Boulevard, Lawrence, Kansas 66045.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), in that the events and omissions giving rise to Plaintiff's claims occurred in this District, and pursuant to 42 U.S.C. § 2000e-5(f)(3), in that the unlawful employment practices stated herein occurred in this District.

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it involves federal questions.

7.      Plaintiff timely filed a Charge of Discrimination against the University with the U.S.

1

Equal Employment Opportunity Commission and the Kansas Human Rights Commission on June 2, 2023.

8.      The U.S. Equal Employment Opportunity Commission issued its Notice of Right to Sue Within 90 Days, which Plaintiff received on March 25, 2024, and accordingly, this lawsuit is timely filed.

## ALLEGATIONS OF FACT

9.      Karl Kammerer first accepted a contract for a three-year term of employment with the University in June 2017; the parties renewed the contract for another three-year term that began on May 17, 2020.

10.      Plaintiff's Job Title for the May 17, 2020, contract was Professionalism Program Director/Assistant Teaching Professor for the School of Business.

11.      On May 21, 2021, Plaintiff suffered a back injury; specifically, a ruptured/herniated disc. The injury resulted in continuous, substantial pain.

12.      The injury and related pain substantially limited Plaintiff's ability to walk, sit, stand, lift, bend, concentrate, and work, along with his ability to engage in other major life activities.

13.      Plaintiff initially attempted to address the injury and related pain with conservative treatment.

14.      During that time, Plaintiff kept his departmental supervisor, Cynthia Steutermann, and Associate Dean Christopher Anderson, up to date on progress with conservative treatment and informed them of the possibility surgery may be required at a later date if conservative treatment failed.

15.      Due to the effect his injury had on his ability to work, Plaintiff requested accommodation in or around September 2021. The University proposed a "switch" or "conversion" related to his contract, removing his administrative responsibilities but assigning new teaching

2

responsibilities beyond a standard teaching load.

16.     In response, Plaintiff sought clarification and confirmation of his role if the parties agreed to the proposed changes. Plaintiff also asked for a new 3-year contract, rather than the "conversion" of his existing contract which was already more than halfway complete.

17.     The University, through Executive Associate Dean Susan Scholz, confirmed her understanding with respect to the changes to Plaintiff's job responsibilities, but stated that the role was the "same" and, as such, she could not terminate and restart the contract. She informed Plaintiff that the change was "in your responsibilities" and those "often change without changing positions." She stated that she had "no basis with HR to essentially extend your term another three years," offering further: "I assume you would prefer to be considered for promotion earlier rather than later."

18.     In spite of the representation that this was not a new role and that no new contract was required, the University required Plaintiff accept a pay reduction of $19,000 as a condition to the accommodation.

19.     When the pay cut took effect, Plaintiff's salary became substantially lower than his peers with similar experience and credentials who did not have administrative duties and were teaching the same courseload.

20.     Plaintiff's pay remained reduced through the termination of his employment in June 2023.

21.     Plaintiff continued conservative treatment for his back injury until October 2021, when his physicians determined he would require surgery.

22.     That same month, Plaintiff informed Steutermann that Plaintiff would require surgery to address his ongoing back pain and that he would be seeking FMLA leave when the surgery had been scheduled.

3

23.     In November 2021, doctors discovered a potentially cancerous tumor on Plaintiff's thyroid that would require surgical removal at some time after his back surgery.

24.     On November 19, 2021, Plaintiff advised the University, through Steutermann and Anderson, of the tumor and requirement for a second surgery. Plaintiff also informed Area Director Clint Chadwick of the development verbally around the same time.

25.     On December 8, 2021, in spite of prior representations that a new contract was *not* required for the changes to Plaintiff's roll, the University sent him a new contract with a commencement date of January 1, 2022, and a "review date" of June 30, 2023. Notably, the "review date" was specified to apply only to administrative appointments, which were not included in the new contract.

26.     The new contract also included "Special Conditions" that were not included in Plaintiff's prior contract. Specifically, it stated: "Subsequent appointments may be offered contingent upon a comprehensive performance evaluation during the final academic year of the appointment and approval from the Dean of the Business School."

27.     After Plaintiff raised objections to the new "conditions," the University removed the special conditions, noting only that the new contract was a "limited term appointment."

28.     Plaintiff's first surgery to address his back injury was scheduled in March 2022. Plaintiff applied and was awarded FMLA leave.

29.     Plaintiff returned to work after FMLA leave for his back surgery on May 13, 2022.

30.     During Plaintiff's leave, the University hired Brian Anderson to serve as Area Director.

31.     On information and belief, Anderson was advised about Plaintiff's medical conditions, FMLA leave, and the fact that the University anticipated Plaintiff would require additional leave for another surgery in the future.

32.     On his return, Plaintiff was subjected to disparate treatment and a hostile work environment.

33.     In July 2022, Mr. Anderson promoted another employee to Area Lead without allowing Plaintiff the opportunity to apply, even though Plaintiff was more qualified for the position. The promoted employee holds an MBA, while Plaintiff has an MBA and PhD. The promoted employee also had less program leadership experience than Plaintiff.

34.     For the Fall 2022 semester, Plaintiff's courses were cross listed, requiring him to teach three times the number of students when compared to similarly situated colleagues. Plaintiff had no control over the cross listing of courses. Mr. Anderson stated this violated policy and addressed the issue with respect to two other effected faculty by removing the cross-listing, thereby reducing their teaching load for the Fall 2022 semester. Mr. Anderson refused to do the same for Plaintiff.

35.     When Plaintiff complained to Mr. Anderson about the additional courseload that arose from cross listing his courses, Mr. Anderson suggested Plaintiff was not up to the task and was not fit to return to work given his back injury and thyroid tumor. Mr. Anderson also suggested Plaintiff take a further pay reduction given his complaints and the fact that, in his view, Plaintiff was "not fit for duty."

36.     The University, through Anderson and others, refused to pay Plaintiff "overload" compensation for the additional work arising from the cross listing of courses Plaintiff was teaching.

37.     The University offered development grants of $7,500 per course for a long list of courses similar to those taught by Plaintiff but excluded Plaintiff's courses from eligibility. Plaintiff was the only person in his department excluded from this opportunity.

38.     Mr. Anderson accused the Plaintiff of violating policy by bringing a guest speaker into his classroom. In spite of the evidence Plaintiff provided regarding the propriety of the practice,

including the fact that the Dean had previously invited this organization into the school, Mr. Anderson stuck to his accusations and made the students cancel the event. Faculty similarly situated to Plaintiff were not criticized for – and were allowed to - invite guest speakers into their classes.

39.     In October 2022, Plaintiff filed a conciliation notice with the University complaining about his treatment since returning from FMLA leave.

40.     On December 15, 2022, the University notified Plaintiff that it would not renew his contract, and placed Plaintiff on administrative leave through the end of his contract term in June 2023.

41.     The University stated that the reason for the termination was that it no longer had a need for faculty with Plaintiff's qualifications and experience.

42.     On information and belief, since Plaintiff was placed on administrative leave, the University has required existing instructors with substantially similar qualifications and experience to take on overload work to cover for Plaintiff's absence, demonstrating the stated reasons for Plaintiff's termination was pretextual.

43.     On information and belief, the University has hired others with qualifications substantially similar to Plaintiff to meet the University's faculty demands in the School of Business, demonstrating the stated reason for Plaintiff's termination was pretextual.

44.     Harassment of Plaintiff continued while on administrative leave.

45.     On May 9, 2023, Plaintiff had surgery to remove the tumor on his thyroid.

46.     Plaintiff was eligible for FMLA leave on May 9, 2023.

47.     Had he not been terminated, Plaintiff would have been eligible for 12 weeks of FMLA leave at the time of his thyroid surgery.

48.     Plaintiff's termination was effective on June 30, 2023.

## COUNT I – DISABILITY DISCRIMINATION

49.     Plaintiff incorporates the allegations of paragraphs 1 through 48 of the Complaint as if fully stated herein.

50.     At all times relevant hereto, Plaintiff was disabled, had a record of disability, and/or was regarded by the University as being disabled.

51.     At all times relevant hereto, Plaintiff was qualified to perform the essential functions of his position.

52.     Beginning in May 2021, and continuing through his termination in June 2023, the University discriminated against Plaintiff because of his disability, in that it paid him less than similarly situated employees without a disability, failed to consider him for promotions, subjected him to severe and pervasive harassment, and ultimately terminated his employment by placing him on a leave of absence and not renewing his contract.

53.     The reasons proffered by the University for harassment, differential treatment, and termination were pretextual.

54.     The University's conduct outlined above was a reckless, willful, and wanton violation of Plaintiff's rights under the ADA.

55.     As a result of the discrimination by the University, Plaintiff has suffered damages, including economic and non-economic losses.

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in his favor for damages including but not limited to back pay, front pay, lost benefits, emotional distress, mental anguish,  attorney-fees, expert witness fees and other costs and expenses of litigating these claims, interest, punitive damages, and such other relief as the court deems just and proper.

## COUNT II – DISABILITY RETALIATION

56.     Plaintiff incorporates the allegations of paragraphs 1 through 55 of the Complaint as if fully stated herein.

57.     At all times relevant hereto, Plaintiff was disabled, had a record of disability, and/or was regarded by the University as being disabled.

58.     In October 2021, Plaintiff requested accommodation to address his disability.

59.     In response, while the University agreed to adjust his job responsibilities, it required that Plaintiff take a pay reduction of $19,000, annually.

60.     The pay reduction resulted in disparate pay, in that even considering the changes to Plaintiff's job responsibilities, Plaintiff was paid less than similarly situated employees that had not sought an accommodation for their disability.

61.     The pay reduction was caused by his request for accommodation, was materially adverse, and continued until he was terminated in June 2023.

62.     On his return from FMLA leave, the University continued to treat him differently to similarly situated employees with respect to overload compensation, courseload, and course development funding, failing to consider him for promotions, and subjected him to severe and pervasive harassment.

63.     At the time, the University, through Anderson, believed that Plaintiff remained disabled and unfit to return to work even though Plaintiff had been released by his physicians to return to work.

64.     At the time, the University, through Anderson, believed that Plaintiff was requesting further accommodations related to his job responsibilities, when Plaintiff made clear that he was only requesting equal treatment to those similarly situated.

65.     Plaintiff complained about the treatment by filing a complaint with the University through its conciliation procedures.

66.     Plaintiff's efforts to utilize the conciliation procedures were fruitless.

67.     Approximately two months later, conciliation efforts ended (to the extent they were ever initiated by the University, which is unknown). The University placed Plaintiff on administrative leave and advised him it would not renew his contract in June 2023.

68.     The disparate treatment of Plaintiff that began in 2021 and continued through his termination was the direct result of Plaintiff's requests for accommodations for his disability, including but not limited to changes to his job responsibilities and a leave of absence for surgical intervention, and the complaints he raised in his request for conciliation services.

69.     The reasons proffered for the University's disparate treatment of Plaintiff, and for his ultimate termination, were pretextual.

70.     The University's conduct outlined above was a reckless, willful, and wanton violation of Plaintiff's rights under the ADA.

71.     As a result of the discrimination by the University, Plaintiff has suffered damages, including economic and non-economic losses.

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in his favor for damages including but not limited to back pay, front pay, lost benefits, emotional distress, mental anguish,  attorney-fees, expert witness fees and other costs and expenses of litigating these claims, interest, punitive damages, and such other relief as the court deems just and proper.

## COUNT III – FMLA DISCRIMINATION AND RETALIATION

72.     Plaintiff incorporates the allegations of paragraphs 1 through 71 of the Complaint as if fully stated herein.

73.     In October 2021, Plaintiff advised his supervisor, Cynthia Steutermann, that he would require surgery and FMLA leave to address his back injury.

74.     In November 2021, Plaintiff advised his supervisor, Cynthia Steutermann, that he would require a second surgery and FMLA leave for a thyroid tumor suspected to be cancerous.

75.     In March 2022, Plaintiff availed himself of his rights to FMLA leave and underwent surgery in an effort to treat his back injury.

76.     Beginning in October 2021, and continuing through his termination in June 2023, the University discriminated and retaliated against Plaintiff for informing the University that he would need FMLA leave in the future, and later for taking FMLA leave, in that it paid him less than similarly situated employees who had not advised the University of intent to take FMLA leave and/or who had not requested and taken FMLA leave, required him to handle a courseload greater than that of similarly situated employees without overload or other additional compensation, failed to consider him for promotions, subjected him to severe and pervasive harassment, and ultimately terminated his employment by placing him on a leave of absence and not renewing his contract.

77.     The reasons proffered by the University for pay and work disparities, harassment, differential treatment, and termination were pretextual.

78.     The University's conduct willfully and wantonly violated the FMLA.

79.     As a result of the discrimination and retaliation by the University, Plaintiff has suffered damages, including economic and non-economic losses.

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in his favor for damages including but not limited to back pay, front pay, lost benefits, emotional distress, mental anguish,  attorney-fees, expert witness fees and other costs and expenses of litigating these claims, interest, liquidated damages pursuant to 29 USCA § 2617, punitive damages, and such other relief as

the court deems just and proper.

## COUNT IV – FMLA INTERFERENCE

80.     Plaintiff incorporates the allegations of paragraphs 1 through 79 of the Complaint as if fully stated herein.

81.     Plaintiff advised the University that he would require FMLA for back surgery in the fall of 2021.

82.     Plaintiff informed the University in the fall of 2021, that he would require additional FMLA leave to remove a tumor to his thyroid suspected to be cancerous.

83.     Beginning in October 2021, and continuing through his termination in June 2023, the University interfered with Plaintiff's FMLA rights in that it paid him less than similarly situated employees who had not advised the University of intent to take FMLA leave and/or who had not requested and taken FMLA leave, required him to handle a courseload greater than that of similarly situated employees without overload or other additional compensation, failed to consider him for promotions, subjected him to severe and pervasive harassment, and ultimately terminated his employment by placing him on a leave of absence and not renewing his contract.

84.     Plaintiff was placed on administrative leave on December 15, 2022, and terminated effective June 30, 2023.

85.     Plaintiff was entitled to FMLA leave on May 9, 2023, the date of his surgical procedure.

86.     The University's termination of Plaintiff's employment interfered with his ability to take FMLA leave.

87.     The University's termination of Plaintiff's employment was related to the anticipation of his need for additional FMLA leave.

88.     The reasons proffered by the University as explanation for placing him on an

11

administrative leave of absence and ultimately, for his termination, were pretextual.

89.    The University's conduct willfully and wantonly violated the FMLA.

90.    As a result of the interference by the University, the Plaintiff has suffered damages, including economic and non-economic losses.

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in his favor for damages including but not limited to back pay, lost benefits, emotional distress, mental anguish, attorney-fees, expert witness fees and other costs and expenses of litigating these claims, interest, liquidated damages pursuant to 29 USCA § 2617, punitive damages, and such other relief as the court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to D. Kan. Rule 40.2(a), Plaintiff hereby requests a trial by jury on all counts and allegations alleged in this Complaint and, further, requests that trial by held in Kansas City, Kansas.

Respectfully submitted,

**Fagan & Emert, LLC**

/s/Jennifer R. Johnson
Jennifer R. Johnson            #22096
800 New Hampshire St., Ste. 110
Lawrence, KS 66044
(785) 331-0300 – Telephone
(785) 331-0303 – Facsimile
jjohnson@faganemert.com
Attorney for Plaintiff