IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KARL KAMMERER,<br><br>      **Plaintiff,**<br><br>      v.<br><br>THE UNIVERSITY OF KANSAS,<br>BRIAN ANDERSON, and<br>SUSAN SCHOLZ,<br><br>      **Defendants.** | Case No. 2:24-CV-2182-JAR-BGS |

### MEMORANDUM AND ORDER

Plaintiff Karl Kammerer brings this action under the Family and Medical Leave Act ("FMLA")[1] and the Rehabilitation Act,[2] asserting claims against his former employer, Defendant University of Kansas ("University"), and his former supervisors, Defendants Brian Anderson and Susan Scholz. Plaintiff alleges that Anderson and Scholz unlawfully interfered with Plaintiff's right to use his FMLA leave and discriminated and retaliated against him for using that leave. Moreover, Plaintiff claims that the University discriminated and retaliated against Plaintiff for his disability. This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 16) for both lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and failure to state a claim under Fed. R. Civ. P. 12(b)(6). The motion is fully briefed, and the Court is prepared to rule. For the reasons stated below, the Court grants Defendants' motion to dismiss on the FMLA claims and grants on the Rehabilitation Act claims

---

[1] Family and Medical Leave Act (FMLA) of 1993, 29 U.S.C. §§ 2601–2654.

[2] Rehabilitation Act of 1973, 29 U.S.C. §§ 701–718.

only to the extent that they seek emotional distress damages.  The Court otherwise denies the motion.

## I. Legal Standard

As a threshold issue, the Court notes that Defendants move to dismiss Plaintiff's FMLA claims under both Rules 12(b)(1) and 12(b)(6) because Scholz and Anderson are not "employers" under the FMLA.[3]  Rule 12(b)(1) applies to motions based on lack of subject-matter jurisdiction.  But the fact that Scholz and Anderson fall outside the scope of the FMLA would not be a jurisdictional defect; rather, it would be a defect in the merits of Plaintiff's claim.[4]  The Court will therefore analyze Defendants' motion against the FMLA claims under Rule 12(b)(6).

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative level"[5] and must include "enough facts to state a claim for relief that is plausible on its face."[6]  Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[7]  The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires

---

[3] 29 U.S.C. § 2611(4).

[4] *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514–516 (2006) ("[W]hen Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character."); *Kenney v. Helix TCS, Inc.*, 939 F.3d 1106, 1108 (10th Cir. 2019) (agreeing that district court properly rejected a 12(b)(1) argument where the defendant claimed that it did not fall within the statute's definitional scope); *Xie v. Univ. of Utah*, 243 F. App'x 367, 371–72 (10th Cir. 2007) (treating as nonjurisdictional the issue whether defendant was "employer" under Title VII).

[5] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216, at 235–36 (3d ed. 2004)).

[6] *Id.* at 570.

[7] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

more than "a sheer possibility."[8]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[9]  Finally, the court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[10]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'"[11]  Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[12]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[13]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[14]

---

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[9] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[10] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

[11] *Id*. (quoting *Twombly*, 550 U.S. at 555).

[12] *Id*. at 678–79.

[13] *Id*. at 679.

[14] *Id*. at 678 (citing *Twombly*, 550 U.S. at 556).

**II.     Background**

The following facts are alleged in Plaintiff's Second Amended Complaint.[15] For the purpose of deciding this motion, the Court assumes these facts to be true and draws all reasonable inferences in Plaintiff's favor.

Plaintiff began teaching in the University's School of Business in 2017 and later renewed his contract in 2020 for another three-year term. A little over one year into that new term, Plaintiff suffered a back injury—a ruptured/herniated disc that not only caused continuous, substantial pain, but also substantially limited his mobility, concentration, and ability to work. To abate the injury, Plaintiff tried "conservative treatment."[16] But concerned that the treatment might be unsuccessful, he informed his supervisors that his injury might require surgery.

After a few months, Plaintiff requested an accommodation for his injury. Scholz, as Executive Associate Dean, was responsible for considering Plaintiff's request for accommodation. In their discussion, Scholz proposed that Plaintiff's employment contract be modified—specifically, that Plaintiff's administrative responsibilities be removed and new teaching responsibilities beyond a standard teaching load be added. Plaintiff agreed to the change after Scholz represented that this would not be a new contract. Despite that representation, the University still "required Plaintiff accept a pay reduction of $19,000 as a condition to the accommodation."[17]

Plaintiff's doctors soon determined that his back injury would require surgery, and Plaintiff informed his supervisor of the surgery and his intention to take FMLA leave. And a

---

[15] Doc. 13.

[16] *Id.* at 2–3.

[17] *Id.* at 4.

4

month later, Plaintiff's doctors determined that he would require an additional surgery after his back surgery to remove a potentially cancerous tumor on his thyroid.

Plaintiff informed Scholz of the anticipated surgeries and his intention to take medical leave. Having learned that Plaintiff would require two occasions of medical leave, the University then sent Plaintiff a new employment contract—at Scholz's direction—which contained a handful of changes from the original 2020 contract: (1) a new commencement date of January 1, 2022, (2) a "review date" of June 30, 2023, (3) and "special conditions," making renewal of Plaintiff's contract "contingent upon a comprehensive performance evaluation."[18] Through these additional provisions, Defendants intended to set up a nonrenewal of Plaintiff's employment contract in 2023. After Plaintiff objected to the "special conditions" provision, the University removed those conditions and noted that the new contract was for "a limited term appointment."[19]

Plaintiff took his leave in March 2022 and returned to work in May 2022. Upon his return, Anderson and Scholz declined Plaintiff the opportunity to apply for a promotion and promoted another less-qualified employee. Plaintiff additionally faced a course load that was three times the load of his other colleagues and was refused additional compensation for that higher course load. Scholz and Anderson did not offer monetary grants to Plaintiff that were available to others in his department, and they prohibited him from inviting guest speakers to his classes—a practice permitted to other department members. And when Plaintiff raised these issues with Anderson, he replied that Plaintiff may not be fit to return to work because of his back injury.

---

[18] *Id.* at 5.

[19] *Id.*

5

Plaintiff filed a conciliation notice with the University, and in response, Scholz and Anderson placed him on administrative leave until his contract expired. They later notified Plaintiff that the University would not renew his contract.

## III. Discussion

In his Second Amended Complaint, Plaintiff alleges two counts under the FMLA against Anderson and Scholz: (1) FMLA discrimination and retaliation, and (2) FMLA interference.[20] Plaintiff also alleges two claims under the Rehabilitation Act against the University: (1) disability discrimination and (2) disability retaliation.[21] Defendant moves to dismiss all claims for failure to state a claim. The Court first addresses the FMLA claims; second, the Rehabilitation Act claims.

### A. FMLA Claims

The Court first addresses the FMLA claims and concludes that Plaintiff has failed to state a claim. As public officials sued in their individual capacities, Anderson and Scholz are not "employers" under the FMLA and thus are not subject to liability under it. Although Plaintiff invites the Court to reconsider its previous ruling on in *Arbogast v. Kansas*[22] on this issue, it declines to do so, as explained below.

Scholz and Anderson argue that as public employees sued in their individual capacities, they are not "employers" governed by the FMLA and thus are not subject to liability under it. The Tenth Circuit has yet to address whether the FMLA's definition of "employer" under 29 U.S.C. § 2611(4)(A) covers public officials sued in their individual capacity. Other circuits,

---

[20] Doc. 13.

[21] *Id.*

[22] No. 13-CV-4007, 2014 WL 1304939 (D. Kan. Mar. 31, 2014).

however, are divided over this issue. The Sixth and Eleventh Circuits hold that public officials in their individual capacity are not employers under the FMLA;[23] the Third, Fifth, and Eighth Circuits hold that they are.[24] As before, the Court finds particularly persuasive the textual statutory interpretation and analysis of the Sixth Circuit in *Mitchell v. Chapman* and concludes that public officials are not "employers" subject to liability under the FMLA.

In addressing a statutory construction question, "we begin with the language employed by Congress, and we read the words of the statute in their context and with a view to their place in the overall statutory scheme."[25] "Courts must 'ordinarily resist reading words or elements into a statute that do not appear on its face.'"[26] "It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that . . . no clause, sentence, or word shall be superfluous . . . .'"[27]

The FMLA provides that an "employer" who denies rights conferred by the Act is subject to liability. It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]."[28] If an employer interferes with an employee's FMLA-created right to medical leave, it has violated the FMLA, regardless of its

---

[23] *Mitchell v. Chapman*, 343 F.3d 811, 825–33 (6th Cir. 2003); *Wascura v. Carver*, 169 F.3d 683, 687 (11th Cir. 1999).

[24] *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 667 F.3d 408 (3d. Cir. 2012); *Modica v. Taylor*, 465 F.3d 174 (5th Cir. 2006); *Darby v. Bratch*, 287 F.3d 673 (8th Cir. 2002).

[25] *United States v. Sturm*, 673 F.3d 1274, 1279 (10th Cir. 2012) (quoting *Been v. O.K. Indus.,* 495 F.3d 1217, 1227 (10th Cir. 2007)).

[26] *Id.* (quoting *Bates v. United States,* 522 U.S. 23, 29 (1997)).

[27] *TRW Inc. v. Andrews,* 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).

[28] 29 U.S.C. § 2615(a)(1).

intent.[29]  Subparagraphs (A) and (B) of § 2611(4) of the FMLA provide:

> **(A)** In general
>
> The term employer—
>   **(i)** means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;
>   **(ii)** includes—
>     **(I)** any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and
>     **(II)** any successor in interest of an employer;
>   **(iii)** includes any "public agency", as defined in section 203(x) of this title; and
>   **(iv)** includes the Government Accountability Office and the Library of Congress.
>
> **(B)** Public agency.
>
> For purposes of subparagraph (A)(iii), a public agency shall be considered to be a person engaged in commerce or in an industry or activity affecting commerce.

First, a plain reading of the statute suggests that public officials are not liable as individuals because the provision imposing individual liability is in a distinctly separate clause, § 2611(a)(ii)(I), from the provision that imposes liability on a public agency, § 2611(B).[30] Plaintiff's interpretation of "employer" under the FMLA urges that clauses (ii)–(iv) of § 2611(A) are interrelated and must be read together, rather than separately.

But, as the Sixth Circuit explained, the presence of the em dash following the term "employer" suggests that clauses (i)–(iv) modify the term employer.[31]  The em dash is used again at clause (ii) to indicate the relationship between the subpart (I) on individual liability and

---

[29] *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir. 2006).

[30] *Mitchell v. Chapman*, 343 F.3d 811, 829–30 (6th Cir. 2003).

[31] *Id.* at 829.

8

subpart (II) on successors in interest.[32] Both subparts can be applied to private organizations but only one could apply to public agencies because public agencies typically do not have successors in interest in labor situations.[33] It follows that section (ii) should not be applied to public agencies because the subpart on successors in interest would be superfluous as to public agencies.[34] Despite the consistent use of the em dash to show inter-relatedness, there is no such punctuation to show that sections (ii)–(iv) should be linked in the same manner.[35] In the absence of the em dash and considering that each clause is enumerated, logic suggests that clauses (ii)–(iv) are each distinct provisions.

As the Sixth Circuit further stated, if the public agency provision were read with the provisions controlling individual liability, it would provide as follows:

> [T]he term employer means any person engaged in interstate commerce . . . who employees 50 or more employees . . . ; and includes any person who acts directly or indirectly in the interest of any person engaged in interstate commerce . . . who employs 50 or more employees . . . ; and any successor in interest of any person engaged in interstate commerce . . . who employs fifty or more employees; and includes any public agency engaged in interstate commerce . . . who employs 50 or more employees . . . ; and includes any person who acts directly or indirectly, in the interest of the public agency engaged in interstate commerce . . . who employs fifty or more employees; and any successor in interest of the public agency . . . engaged in interstate commerce . . . who employs fifty or more employees . . . .[36]

In addition to the redundant results above, the provisions controlling individual liability (clauses (i)–(ii)) cannot commingle with the provision controlling public liability (clause (iii)), without

---

[32] *Id.* at 830.

[33] *Keene v. Rinaldi*, 127 F. Supp. 2d 770, 776 (M.D.N.C. 2000).

[34] *Id.*

[35] *Mitchell*, 343 F.3d at 830.

[36] *Id.* at 830–831 (quoting 29 U.S.C. § 2611(4)(A)(i)–(iii)).

9

rendering section 2611(4)(B) superfluous.[37]  Moreover, the Code of Federal Regulations defines "public agencies" under the FMLA as "employers" regardless of the number of employees that are employed by such an agency.[38]  Thus, to commingle clause (i) with clause (iii) would lead to a conflicting result in how public agencies are treated under the FMLA.

The Court does not find persuasive the contrary approach adopted by the Third,[39] Fifth,[40] and Eighth Circuits,[41] which commingles the individual-liability provision with the public-agency provision and analogizes the FMLA to the Fair Labor Standards Act (the "FLSA").  The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization."[42]  To be sure, the FMLA borrows heavily from the FLSA.  But "in each instance where the FMLA adopts a provision of the FLSA, the FMLA refers directly to the FLSA, rather than provides a restatement of the FLSA's provision."[43]  Moreover, the definition of "employer" is markedly different in these two statutes.  The FMLA, unlike the FLSA, expressly segregates the clauses related to individual liability from those related to public

---

[37] *Id.* at 829–30; *see also Williams v. Taylor*, 529 U.S. 362, 404 (2000) (explaining that a bedrock of statutory construction is that a court must give effect to each clause and word of a statute).

[38] 29 C.F.R. § 825.104 ("An employer covered by FMLA is any person engaged in commerce or in any industry or activity affecting commerce, who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.  Employers covered by FMLA also include any person acting, directly or indirectly, in the interest of a covered employer to any of the employees of the employer, any successor in interest of a covered employer, and any public agency.  Public agencies are covered employers without regard to the number of employees employed.").

[39] *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 413–17 (3d Cir. 2012).

[40] *Modica v. Taylor*, 465 F.3d 174, 184–86 (5th Cir. 2006).

[41] *Darby v. Bratch*, 287 F.3d 673, 680–81 (8th Cir. 2002).

[42] 29 U.S.C. § 203(d); *see Modica*, 465 F.3d at 186–87; *Darby*, 287 F.3d at 681.

[43] *Mitchell v. Chapman*, 343 F.3d, 811 831–32 (6th Cir. 2003).

agency.[44]  Because the Court finds that the FLSA's statutory definition of employer is inapposite here, the Court declines to apply liability to Scholz and Anderson based on the FLSA's definition of "employer."

Resisting this conclusion, Plaintiff asks the Court to reconsider its previous analysis and join the "now clear majority view."[45]  The Court appreciates the deepening split in authority—both among various district courts[46] and within this district[47]—but the state of play on this issue is generally the same as when the Court previously considered the ISSUE.  Plaintiff provides no new binding authority and offers no substantive argument on the issue, let alone any arguments not considered by the Court previously.  For the reasons stated above, the Court remains persuaded that a public employee acting in her individual capacity is not an "employer" under the FMLA and adheres to its previous ruling.

Because Scholz and Anderson are public employees sued in their individual capacities, neither is an "employer" under the FMLA and thus neither is liable under the Act.  Plaintiff's cause of action under the FMLA therefore will not lie.  The Court grants Defendants' motion to dismiss the FMLA claims for failure to state a claim.

---

[44] *Keene v. Rinaldi*, 127 F. Supp. 2d 770, 775 n.2 (M.D.N.C. 2000) ("In 1974, Congress merely engrafted "Public Agency" into the FLSA by adding to an existing definition for private employers. This did create an ambiguous situation concerning the liability of public agency employees. But, in the FMLA, Congress explicitly took "Public Agency" out of the private employer definition and disconnected it from liability based on a person acting directly or indirectly in the interest of an employer. Therefore, a better way to view the situation is that the FMLA corrected the ambiguity of the FLSA, as opposed to letting the ambiguity of the FLSA control the interpretation of the FMLA.").

[45] Doc. 22 at 3.

[46] *See, e.g.*, *Cordova v. New Mexico*, 283 F. Supp. 3d 1028, 1039 (D.N.M. 2017); *Dixon v. Oklahoma*, No. CIV-19-391, 2020 WL 7089427, at 3 (E.D. Okla. Dec. 3, 2020).

[47] *Richards v. Schoen*, No. 17-4080, 2018 WL 447731, at *5 (D. Kan. Jan. 17, 2018); *Miller v. Unified Sch. Dist. No. 500*, 347 F. Supp. 3d 626, 630 (D. Kan. 2018).

**B.     Rehabilitation Act Claims**

The Court next addresses the Rehabilitation Act claims and concludes that Plaintiff sufficiently states a claim upon which relief can be granted. Defendants argue that Plaintiff fails to state a claim because he "has no available entitlement to relief."[48] Plaintiff seeks two categories of relief in the Second Amended Complaint: economic damages (specifically, "damages including but not limited to back pay, front pay, [and] lost benefits"[49]) and emotional distress damages. During the briefing on this motion, Plaintiff and Defendant have reached agreement that a Rehabilitation Act claimant cannot seek emotional distress damages in light of *Cummings v. Premier Rehab Keller*.[50] Accordingly, the Court will dismiss Plaintiff's Rehabilitation Act claims to the extent that they seek emotional distress damages.[51]

To show that Plaintiff has no entitlement to relief for economic damages, Defendants rely on *Cummings v. Premier Rehab Keller*, which held that in Rehabilitation Act cases, the plaintiff may only seek damages "traditionally available in suits for breach of contract."[52] Because of that limitation, Defendant argues, Plaintiff's "only potential recourse is for traditional contract damages under his employment contract,"[53] and because Plaintiff admits that "the University allowed him to serve out his entire employment contract,"[54] he is not owed "contract damages."[55]

---

[48] Doc. 17 at 1.

[49] Doc. 13 at 12, 14.

[50] 596 U.S. 212 (2022).

[51] Defendants also argue that Plaintiff cannot seek punitive damages in light of *Barnes v. Gorman*, 536 U.S. 181 (2002), even though Plaintiff does not appear to seek punitive damages on the Rehabilitation Act claims.

[52] *Cummings*, 596 U.S. at 220–21 (quoting *Barnes*, 536 U.S. at 187).

[53] Doc. 17 at 10.

[54] Doc. 23 at 4–5.

[55] Doc. 17 at 3.

12

But Defendants conflate *Cummings*'s teaching on the types of damages available in Rehabilitation Act claims with proving damages arising from a breach of contract. Although *Cummings* and *Barnes* limit the type of damages available for Rehabilitation Act suits to those traditionally available for breach of contract, they do not require the plaintiff to allege as an element of her claim damages arising from a contract.[56] *Barnes* itself involved a man bringing a Rehabilitation Act claim against the Kansas City Board of Police Commissioners for failing to provide adequate transportation procedures for arrestees with spinal-cord injuries; there was no contract between the plaintiff and the Board.[57] And yet, the plaintiff was still entitled to compensatory damages.[58] Further, *Cummings* cautioned that "our cases do not treat suits under [the Rehabilitation Act] as literal 'suits in contract.'"[59] Indeed, to adopt Defendants' reasoning would gut claims under the Rehabilitation Act[60]: so long as the employee's contract was not breached, plaintiffs would have no claim for discrimination or retaliation—even where, as Plaintiff alleges here, the employer retaliated by requiring the employee to take a substantial pay cut, refusing to consider the employee for promotion, and declining to renew his contract. Neither *Cummings* nor *Barnes* calls for that conclusion, and the Court will not adopt it here.

And looking to Plaintiff's Second Amended Complaint and crediting his factual assertions, Plaintiff alleges several injuries that would support an award of economic damages—even if not arising from breach of Plaintiff's employment contract per se. On the disability

---

[56] *Cummings*, 596 U.S. at 219–20 (first quoting *Barnes*, 536 U.S. at 186; and then quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 287 (1998)) (applying the contract-law analogy to determine the "*scope* of damages remedies," not the injury that must be pled).

[57] *Barnes*, 536 U.S. at 183–84.

[58] *Id.*

[59] *Cummings*, 596 U.S. at 225 (quoting *Sossamon v. Texas*, 563 U.S. 277, 290 (2011)).

[60] It would also implicate various antidiscrimination statutes like Title VI and Title IX Act because they are all Spending Clause legislation governed by *Barnes* and *Cummings*. *See Cummings*, 596 U.S. at 218, 220.

discrimination claim, for example, Plaintiff alleges that because of his disability, Defendants (1) "paid him less than similarly situated employees without a disability," (2) required him to take on a significantly greater workload than other employees, (3) "failed to consider him for promotions," (4) and "terminated his employment by placing him on a leave of absence and not renewing his contract." And on the disability retaliation claim, he makes similar allegations: Defendants disparately considered him for overload compensation, courseload assignment, development funding, and a promotion. Because Plaintiff has adequately pled injuries that would support an award of economic damages, the Court cannot agree with Defendants that Plaintiff has "no available entitlement to relief." The Court denies Defendants' motion to dismiss the Rehabilitation Act claims for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss (Doc. 16) is **granted in part and denied in part**. Plaintiff's FMLA claims (Counts I and II) are dismissed. Defendants Scholz and Anderson are hereby dismissed with prejudice. To the extent that Plaintiff's Rehabilitation Act claims against the University (Counts III and IV) seek damages for emotional distress and mental anguish, the claims are dismissed. The motion is otherwise denied.

**IT IS SO ORDERED.**

Dated: November 6, 2024

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE
